**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

**CIVIL CASE NO. 1:10cv247**

WILLARD WARREN,       )
                              )
        Petitioner,    )
                              )
        vs.          )    **MEMORANDUM OF DECISION**
                              )        **AND ORDER**
ALVIN W. KELLER, JR.,   )
Secretary, Department of   )
Corrections, and        )
CLIFF JOHNSON, Administrator,)
Craggy Correctional Institution, )
                              )
       Respondents.   )
_____)

**THIS MATTER** is before the Court on the Respondents' Motion for Summary Judgment [Doc. 7]. Petitioner brings this action pursuant to 28 U.S.C. §§2254 and 2241(c)(3) seeking a writ of habeas corpus, arguing that he is entitled to immediate and unconditional release from his incarceration by the State of North Carolina. [Doc. 1]. For the reasons set forth herein, issuance of the writ is denied.

## PROCEDURAL AND FACTUAL BACKGROUND

Petitioner was tried and convicted for the murder of Lee Jack Clark. Even though originally sentenced to death, Petitioner was ultimately

sentenced to life in prison[1] after North Carolina's death penalty statute was held unconstitutional in Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). At the time Petitioner received his life sentence the version of N.C. Gen. Stat. §14-2 that applied[2] read as follows: "[a] sentence of life imprisonment shall be considered a sentence of imprisonment for a term of 80 years in the State's prison." Id. (Cum. Supp. 1974).

Petitioner contends that the aggregate of the time he has served, plus good time, gain time and merit time awarded to him, adds up to more than eighty years, and thus he is entitled to immediate unconditional release. During the service of Petitioner's sentence, the North Carolina Department of Corrections (DOC) had never deducted Petitioner's good time, gain time or merit time from his sentence. DOC, however, undertook in October 2009 to re-calculate release dates for Petitioner and others, believing that doing so

---

[1] In July 1975, the Petitioner was convicted in state court of first degree murder and sentenced to death. State v. Warren, 289 N.C. 551, 223 S.E.2d 317 (1976). On appeal, the North Carolina Supreme Court found prejudicial error and granted a new trial. Id. At that new trial, the Petitioner was again convicted of first degree murder but was sentenced to life imprisonment because the United States Supreme Court had held in the interim that North Carolina's death penalty statute was unconstitutional. State v. Warren, 292 N.C. 235, 232 S.E.2d 419 (1977). On appeal a second time, the Petitioner's conviction and sentence were affirmed. Id.

[2] The statute, based on its dates of enactment and repeal, is only applicable for offenses committed between April 8, 1974 and June 30, 1978. State v. Bowden, 193 N.C.App. 597, 599 n.1, 668 S.E.2d 107, 109 (2008), review dismissed 363 N.C. 657, 686 S.E.2d 159 (2009). "N.C. Gen. Stat. §15A-2002 (2007) currently provides that 'a sentence of life imprisonment means a sentence of life without parole.'" Id.

may be mandated by the North Carolina Court of Appeals' decision in State v. Bowden, 193 N.C. App. 597, 668 S.E.2d 107 (2008), disc. rev. dismissed 363 N.C. 621, 683 S.E.2d 208 (2009). It was determined that Petitioner's release date, so calculated, would have been June 25, 2008. It was anticipated that all prisoners who had such re-calculated release dates that had passed would be released on October 29, 2009. Before Petitioner was released, however, DOC determined that further litigation was being undertaken regarding whether Bowden required the awarding of such time credits and informed Petitioner that he would not be release on the announced date. [Id. at 11]. Petitioner filed an administrative grievance with the DOC on December 9, 2009, asserting that he should have been released on October 29. This was rejected, and Petitioner then filed a petition for habeas corpus in state court pursuant to N.C. Gen. Stat. §17-6. [Doc. 1 at 26-29]. This was summarily denied on November 4, 2010 based on Jones v. Keller, 364 N.C. 249, 698 S.E.2d 49 (2010), cert. denied, ___ U.S. ___, 131 S.Ct. 2150, 179 L.Ed.2d 935 (2011). [Doc. 9-19]. Petitioner then filed the present petition in this Court. Respondents concede that Petitioner has exhausted his state court remedies. [Doc. 9 at 9]. Respondents have answered and have moved for summary judgment. [Docs. 6, 7]

# STANDARD OF REVIEW

A federal court reviewing an application for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment may not grant such relief unless the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1).

> First, a state-court decision is contrary to th[e] [Supreme] Court's precedent if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law. Second, a state-court decision is also contrary to th[e] [Supreme] Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it].

Williams v. Taylor, 529 U.S. 362, 405, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389, 425 (2000). "This is a 'difficult to meet' and 'highly deferential standard' for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, ___ U.S. ___, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557, 569 (2011) (citations omitted). The petitioner carries the burden of proof. Id. It is "not whether a federal court believes the state Court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473, 127 S.Ct. 1933, 1939, 167 L.Ed. 2d 836, 844 (2007). This is

a standard even higher than clear error. <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75, 123 S.Ct. 1166, 1174-75, 155 L.Ed.2d 144, 158 (2003).

Moreover, review "is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Id.</u> "It would be contrary to [the statutory] purpose to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively <u>de novo</u>." <u>Cullen</u>, 131 S.Ct. at 1399. The statutory deference "applies even where there has been a summary denial" by the state supreme court, as was the case here. <u>Id.</u>, at 1402; <u>Harrington v. Richter</u>, ___ U.S. ___, 131 S.Ct. 770, 784, 178 L.Ed.2d 624, 638 (2011).

This matter is before the Court on the Respondent's motion for summary judgment, wherein the standard would ordinarily be that

> Under the Federal Rules of Civil Procedure [Rule 56], summary judgment shall be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, ... show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ... As the Supreme Court has observed, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

<u>Bouchat v. Baltimore Ravens Football Club, Inc.</u>, 346 F.3d 514, 519 (4th Cir. 2003), *certiorari den.* 541 U.S. 1042, 124 S.Ct. 2171, 158 L.Ed.2d 732 (2004)

(emphasis in original).  Moreover, a party opposing a properly supported

motion for summary judgment

> "may not rest upon the mere allegations or denial of [his]
> pleadings," but rather must "set forth specific facts showing that
> there is a genuine issue for trial."  Furthermore, neither
> "[u]nsupported speculation," nor evidence that is "merely
> colorable" or "not significantly probative," will suffice to defeat a
> motion for summary judgment; rather, if the adverse party fails to
> bring forth facts showing that "reasonable minds could differ" on
> a material point, then, regardless of "[a]ny proof or evidentiary
> requirements imposed by the substantive law," "summary
> judgment, if appropriate, shall be entered."

Id. (citations omitted).  In light of the fact that this matter is brought to this

Court pursuant to 28 U.S.C. §2254, however, this matter will be decided on

the record presented.  Cullen, __ U.S. __, 131 S.Ct. at 1398, 179 L.Ed.2d at

569.

## PETITIONER'S REQUEST FOR AN EVIDENTIARY HEARING

In the prayer for relief in his Petition, Warren asks that the Court "grant

Petitioner an evidentiary hearing on all issues where a hearing is indicated,

to allow him a full and fair opportunity to present the facts which support his

claims." [Doc. 1 at 58].  In his memorandum in opposition to the Respondent's

motion for summary judgment, Petitioner supports his request by stating that

he "is entitled to an evidentiary hearing to develop his own factual record,

pursuant to 28 U.S.C. §2254 (d), (e)." [Doc. 12 at 24].  Petitioner, however, is

only entitled to an evidentiary hearing if

(A) the claim relies on -

> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. §2254 (e)(2). Petitioner has neither alleged nor provided a forecast of evidence to show that he is able to meet either prong of this test, much less both. Therefore, Petitioner's request for an evidentiary hearing must be denied.

## DISCUSSION

Petitioner argues that he is entitled to have his sentence reduced by the good time, gain time and merit time he has earned, and when that is done and his life sentence is treated as one of eighty years per N. C. Gen. Stat. §14-2, that he became eligible for release as of June 25, 2008.

This underlying issue is governed by state law. The applicable version of N.C. Gen. Stat. §14-2 states that "[a] sentence of life imprisonment shall be considered a sentence of imprisonment for a term of 80 years in the State's prison." Id. (Cum. Supp. 1974). In November 2008, the North Carolina Court

of Appeals held in State v. Bowden, 193 N.C. App. 597, 601, 668 S.E.2d 107, 110 (2008), that for that class of prisoners sentenced to life prior to the repeal of §14-2,[3] a "life sentence is considered as an 80-year sentence *for all purposes*" and therefore remanded "to determine how many sentence reduction credits [the prisoner] was eligible to receive and how those credits [were] to be applied." Id. (emphasis added). The North Carolina Supreme Court subsequently declined to review the Court of Appeals' ruling. State v. Bowden, 363 N.C. 621, 683 S.E.2d 208 (2009).

Prior to the Bowden decision, the North Carolina Department of Corrections (DOC) regulations had "interpreted a life sentence imposed under [N.C. Gen. Stat. §14-2] to be an indeterminate sentence that would expire only upon an inmate's death[.]" Jones v. Keller, 364 N.C. 249, 252, 698 S.E.2d 49, 53 (2010), cert. denied __ U.S. __, 131 S.Ct. 2150, 179 L.Ed.2d 935 (2011). While other DOC regulations "provide for good time, gain time, and merit time to be credited against an inmate's sentence," Id., at 254, 698 S.E.2d at 54. DOC's practice as it related to prisoners serving a sentence of life imprisonment, however, was to award "good time solely for the purposes of allowing [the prisoner] to move to the least restrictive custody grade and to

---

[3]This class of defendants consisted of those sentenced to life in prison for offenses committed between April 8, 1974 and June 30, 1978. State v. Bowden, 193 N.C.App. 597, 599 n.1, 668 S.E.2d 107, 109 (2008), review dismissed 363 N.C. 657, 686 S.E.2d 159 (2009).

calculate his parole eligibility date, and not for the purpose of allowing ... unconditional release." Id.

The decision of the North Carolina Court of Appeals in Bowden, however, threw these regulations into question. By opining that "N.C. Gen. Stat. §14-2 (1974) requires that [a defendant's] life sentence [be] considered as an 80-year sentence *for all purposes*," Bowden, 193 N.C.App. at 601, 668 S.E.2d at 110, (emphasis provided), the Court of Appeals raised -- but did not decide -- the issue of whether the regulations applying good time, gain time and merit time differently for life term prisoners and than for prisoners for a term of years was inconsistent with that statute.

The Supreme Court of North Carolina addressed this issue in Jones, 364 N.C. 249, 698 S.E.2d 49.

> [W]hile section 14-2 sets the term of imprisonment, that statute is silent as to the administration of the sentence. Instead, the General Assembly delegated that responsibility to DOC. N.C.G.S. §148-11 (Cum. Supp. 1974). The [relevant] statutes further provide that "[t]he Secretary of Correction shall have control and custody of all prisoners serving sentence in the State prison system, and such prisoners shall be subject to all the rules and regulations legally adopted for the government thereof." Specifically, "[t]he rules and regulations for the government of the State prison system may contain provisions relating to grades of prisoners, rewards and privileges applicable to the several classifications of prisoners as an inducement to good conduct, allowances of time for good behavior, the amount of cash, clothing, etc. to be awarded prisoners after their discharge or parole."
>                                    . . .

Under the doctrine of separation of powers, [under the North Carolina Constitution, art. I, §6], this Court has long held that when an agency of another branch of government is authorized to exercise regulatory power over the administration of prison sentences, we will defer to that authority to the extent the delegation is constitutional.

. . .

"The functions of the court in regard to the punishment of crimes are to determine the guilt or innocence of the accused, and, if that determination be one of guilt, then to pronounce the punishment or penalty prescribed by law. The execution of the sentence belongs to a different department of the government. The manner of executing the sentence and the mitigation of punishment are determined by the legislative department, and what the Legislature has determined in that regard must be put in force and effect by the administrative officers."

. . .

The prison rules and regulations respecting rewards and privileges for good conduct ('good time') are strictly administrative and not judicial. . . . Accordingly, . . . the judiciary will not review the DOC's grant, forfeiture, or application of credits against a prisoner's sentence.

Id. at 252-53, 698 S.E.2d at 53-54 (internal citations omitted). The Court, therefore, concluded that the application of good time, gain time and merit time to a prisoner's sentence was within the authority of DOC to decide, regardless of whether §14-2 requires that a life sentence be treated as a sentence for a term of years for all legislative purposes, i.e. all purposes that are within the purview of the legislative branch. Since DOC had adopted a regulation that all prisoners serving life sentences (regardless of whether they fell within the 1974-78 time frame) were not entitled to have any deductions

awarded toward a possibility of unconditional release, that determination by DOC was final regardless of the enactment of §14-2.

The Supreme Court of North Carolina is the highest arbiter of that state's law. It decided Jones based on principles of North Carolina state constitutional and regulatory law. As such, that determination is not reviewable by this Court. To the extent that the Petitioner claims violations of state law or procedure this Court cannot address such issue; "federal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606, 622 (1990). This is of particular importance in this matter because the Petitioner expends substantial energy (and pages) in his Petition arguing that the dissent in Jones is correct and the majority is incorrect in its assessment of matters related to state law. [Doc. 1 at 15-25, 30-38].[4] Such issues of state law, however, will not be addressed further.

Petitioner, however, argues that the ruling in Jones, as applied to his case, violates the due process clause of the Fourteenth Amendment and the

---

[4] Petitioner's first argument is that he "earned sentence reduction credits without reservation or restriction." [Doc. 1 at 30]. This is purely a question of state law. The argument hinges on the interpretation of the DOC regulations. In presenting this claim, Petitioners copies verbatim his first claim from his state habeas petition [Doc. 9-10 at 25-33], and re-presents it to this Court without regard for the entirely different jurisdiction of this Court related to this matter. In addition, "the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison." Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935, 951 (1974).

*ex post facto* clause of the United States Constitution.  These arguments are the basis of Petitioner's claims under 28 U.S.C. §2254.

## DUE PROCESS

Petitioner's argument that his right to due process has been violated was addressed by the Supreme Court of North Carolina in <u>Jones</u>, wherein that Court held that

> "a State may create a liberty interest protected by the Due Process Clause through its enactment of certain statutory or regulatory measures."  Prisoner benefits in the form of good time, gain time, and merit time arise  from such statutes or regulations.

> The liberty interest alleged to be at issue here thus is one created by the State through its regulations. . . . [T]he liberty interest created by the State through its regulations may be limited to those particular aspects of an inmate's incarceration that fall within the purview of those regulations.  DOC has interpreted its regulations as permitting the award of different types of time credits for certain purposes and has, in fact, awarded those credits to [the Petitioner] for those purposes.  On the record before this Court, DOC has taken no action against [the Petitioner] for punitive reasons.  Because [the Petitioner] has received the awards for which he is entitled, **he has not been denied credits in which he has a constitutionally protected liberty interest.**

> Petitioner contends, however, that his credits should be applied toward calculation of the date of his unconditional release.  We disagree.  As indicated in <u>Wolff [v. McDonnell</u>, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)], <u>[Hewitt v.] Helms</u>, [459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)] and <u>Sandlin [v. Connor</u>, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)] [the petitioner's] liberty interest in good time, gain time, and merit

time is limited. Thus, his liberty interest, **if any**, in having these credits used for the purpose of calculating his date of unconditional release is de minimis, particularly when contrasted with the State's compelling interest in keeping inmates incarcerated until they can be released with safety to themselves and to the public.

. . .

Except for this limited time period [of 8 April 1974 to 30 June 1978], life sentences unquestionably were and still are indeterminate sentences. **No regulation explicitly provides that credits are to be used to calculate an unconditional release date, and DOC asserts that it never considered that these regulations applied to Jones or other inmates similarly situated for the purpose of calculating an unconditional release date. Because the regulations were understood to be inapplicable for that purpose, the State did not fully prepare [the petitioner] for unconditional release**. In light of the compelling State interest in maintaining public safety, we conclude that these regulations do not require that DOC apply time credits for purposes of unconditional release to those who committed first-degree murder during the 8 April 1974 through 30 June 1978 time frame and were sentenced to life imprisonment.

Jones, 364 N.C. at 256-58, 698 S.E.2d at 55-57 (citations omitted, emphasis added).

Petitioner argues that this conclusion violates due process. Petitioner's argument consists of three simple steps. First, he states unequivocally that his "habeas petition presents arguments identical to those considered by North Carolina courts in Jones." [Doc. 12 at 2]. In other words, the basis for the rejection of Jones' claims form the basis for the summary denial of the Petitioner's claims in the state court. Second, Petitioner argues that:

> Despite its acknowledgment that DOC's treatment of Mr. Jones as serving an indeterminate life sentence was legal error - a misreading of an "unambiguous[ ]" statute - the court stated that it would "defer to DOC's interpretation of its regulations." But an error of law is not a legitimate "interpretation."

[Id. at 7].   Third, Petitioner argues that he was, in fact, awarded the time credits against his sentence. [Id. at 10].  Based thereon Petitioner concludes that the decision not to release him constituted a rescission ("refusal to honor that entitlement" [Id.]) of those credits, contrary to the ruling of the United States Supreme Court in Wolff :

> While "the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison, where such credits are awarded by a State, an inmate's interest in those credits "has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle [the inmate] to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated."
>
> . . .
>
> Wolff makes clear that sentence-reduction credits cannot be revoked in this manner: The State may rescind such credits only for the reasons specified in its existing regulations.  To find otherwise drains the liberty interest created by those sentence-reduction policies of any "real substance."

[Id. at 11-12].

Petitioner's argument is dependent, however, on his second premise set forth above, in which he argues that the Supreme Court of North Carolina was wrong as to a matter of state law in determining whether Petitioner was ever

actually awarded or entitled to be awarded any good time, gain time or merit time credits *against his sentence.* The Supreme Court determined that he had *not* been, based on state law, DOC regulations and the separation of powers doctrine as set forth in the North Carolina Constitution,[5] even though he had been awarded such credits for *other* purposes. "[F]ederal habeas corpus relief does not lie for errors of state law." Lewis, 497 U.S. at 780, 110 S.Ct. at 3102, 111 L.Ed.2d at 622. The Supreme Court of the United States, has "long recognized that a mere error of state law is not a denial of due process." Swarthout v. Cooke, ___ U.S. ___, 131 S.Ct. 859, 863, 178 L.Ed.2d 732, 737 (2011); Baggett v. Keller, 2011 U.S. Dist. 71724 at *11 (E.D.N.C. July 1, 2011). Petitioner nonetheless argues that "an error of law is not a legitimate 'interpretation'" [Doc. 12 at 7], and that "the court employed reasoning that drains the basic guarantee of due process" [Id. at 6]. Petitioner's argument is simply unsupported by the law. Therefore, even if the Supreme Court of North Carolina were obviously in error in its application of state law, that ruling would stand and could not be challenged as part of this proceeding.

---

[5] Petitioner's first claim, and again much of Petitioner's brief, focuses on how the state Supreme Court dissent is correct and the majority is not. Even the dissent, however, would have decided this case on state law grounds. ("DOC essentially argues that because it has fundamentally misapprehended the nature of Jones's sentence for the past thirty years, it should be allowed to perpetuate its mistake." Jones, 364 at 266, 698 S.E.2d at 62, (Timmons-Goodson, J., dissenting).

Petitioner's argument also fails for another reason. In a proceeding under 28 U.S.C. §2254, a petitioner must show much more than an error of Federal law on the part of the state court. He must demonstrate that the state ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1). Petitioner has not done so in this case. He argues that the state court ruling is contrary to Wolff, but that case decided a very different issue. In Wolff it was clear that the petitioner had been awarded the credits to reduce his sentence, but then lost those credits as a penalty for misbehavior, without an adequate opportunity to be heard. Here, Petitioner was never awarded the credits for the purposes of reducing his sentence; the state court so found as a matter of law. Therefore, the Petitioner is unable to show that the state court reached a conclusion opposite to the holding on Wolff or that it confronted facts materially indistinguishable from those in Wolff. As such, Petitioner fails to meet the standard in Williams, 529 U.S. at 405, 120 S.Ct. at 1519, 146 L.Ed.2d at 425, and this claim must be dismissed.

It bears noting that in order to try to apply Wolff, Petitioner argues a factual scenario that bears little resemblance to the circumstances actually presented herein. In this case DOC treated Petitioner like all other persons serving a life sentence, namely that he was not awarded any reduction in

sentence for his good time, gain time or merit time. When the North Carolina Court of Appeals handed down its decision in <u>Bowden</u> DOC personnel were concerned (and rightly so) that they may be required to go back and award such credits against life sentences handed down between 1974 and 1978. They undertook the administrative steps necessary to prepare for such an eventuality, and even made calculations of what such prisoners' release dates would be. [Doc. 1-7]. There is nothing in the record, however, to show that DOC *ever actually awarded* the Petitioner any reduction in his sentence. Petitioner attaches to his Petition a number of e-mails that were submitted in the state proceeding showing these preparations on the part of DOC, but they do not show that any reduction was ever actually awarded. They merely show the dutiful actions of DOC employees trying to ascertain how the decision in <u>Bowden</u> may affect the actions they should take. Petitioner asserts in his Petition that he was told that he would be released on October 29, 2009. Based thereon, he argues that he had actually been awarded the reduction. There is nothing in the record, however, other than the naked allegation in the Petition to support this conclusion. Review in this matter "is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Cullen</u>, __ U.S. __, 131 S.Ct. at 1398, 179 L.Ed.2d at 569. Moreover, the October 29 date was publicly announced as the possible release date for

17

an entire class of prisoners in response to the confusion surrounding <u>Bowden</u>. The fact that Petitioner may have become very hopeful that he might be released does not show that he had actually been awarded the reduction in his sentence, or that such hope rise to a legitimate expectation. The actions of DOC in planning for the eventuality of Petitioner's possible release, and Petitioner's hope that he would be released, do not add up to become some protected liberty interest in the right to be released. <u>Baggett</u>, 2011 U.S. Dist. LEXIS 71724 at *11.

Lastly, Petitioner makes much of the Supreme Court of North Carolina supposedly having determined that Petitioner had a "de minimis" liberty interest in his sentence-reducing credits, arguing that "None of the precedents of the Supreme Court of the United States, however, remotely support the characterization of an inmate's interest in freedom from even a day of incarceration -- let alone decades of imprisonment -- as 'de minimis.'" [Doc. 12 at 10]. In so doing, Petitioner utterly mischaracterizes the state Supreme Court's holding. It held that "[b]ecause [Petitioner] has received the awards to which he is entitled for the purposes for which he is entitled, he has not been denied credits in which he has a constitutionally protected liberty interest. . . Thus, his liberty interest, if any, is de minimis." <u>Jones</u>, 364 N.C. at 257, 698 S.E.2d at 56. Petitioner's misrepresentation of the state court

decision he wishes to attack does not improve his argument. The state court found as a matter of state law that he had not been awarded sentence-reducing credits. Thus, he had *no* liberty interest in having his sentence reduced by what credits he did receive.

As such, Petitioner has failed to make an adequate legal argument and has failed to present a factual basis in the record from the state proceeding to support the argument he has made. For these reasons, the Petitioner's due process argument must fail.


**Ex Post Facto**

The Petitioner's *ex post facto* and fair notice claims are considered together.[6] They are, in fact, part and parcel of the same argument. "Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and government restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." Weaver v. Graham, 450 U.S. 24, 29-30, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981).

The Petitioner claims that DOC violated the constitutional prohibition

---

[6]In response to the Respondents' Motion for Summary Judgment, the Petitioner did not make a separate argument concerning the fair notice claim. Respondents argued that it is not a separate claim from the *ex post facto* claim and the Court finds the Petitioner's lack of response to be a concession thereof. Fed.R.Civ.P. 56(e).

against *ex post facto* laws by refusing to apply his sentencing credits towards an unconditional release date.  As previously noted, the Petitioner admits that this claim is identical to that raised in Jones. [Doc. 1, at 26-29].  The Court therefore recites the Jones Court's ruling.

> [Jones] contends that DOC's interpretation of its regulations has retroactively increased the punishment for his offense after the offense was committed. ... [T]he ex post facto prohibition applies to: "'Every law that *changes the punishment*, and inflicts a *greater punishment*, than the law annexed to the crime when committed.'" Legislation that retroactively alters sentence reduction credits in effect at the time a crime was committed can be an unconstitutional ex post facto law.  However, Jones does not allege that any legislation or regulation has altered the award of sentence reduction credits.  Nor has DOC changed its interpretation of its applicable regulations.  Accordingly, ... Jones has suffered no ex post facto violation.

Jones, 364 N.C. at 259, 698 S.E.2d at 57 (emphasis in original; citations omitted).

The Jones Court also noted that DOC had no regulations regarding sentence reduction credits in place at the time Jones (as well as Petitioner) was convicted and sentenced.  Id., at 258, 698 S.E.2d at 57.  Moreover, even after such regulations were enacted, DOC "has never used good time, gain time, or merit time credits in the calculation of unconditional release dates for inmates who received sentences of life imprisonment."  Id., 364 N.C. at 254, 698 S.E.2d at 54.  Instead, such credits were used to move a prisoner serving a life sentence to less restrictive custody or to calculate parole eligibility.  Id.

Indeed, the Court pointed out that DOC has no regulation which explicitly provides that credits are to be used to calculate an unconditional release date. Id., at 258, 698 S.E.2d at 57. As a result, DOC's determination not to apply sentence reduction credits toward an unconditional release date for Jones and the Petitioner "had no effect on the punishment assigned by law when the act to be punished occurred." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 878 (1st Cir. 2010) (reincarceration of prisoners convicted of murder after release pursuant to electronic supervision program under new regulation eliminating program did not violate *ex post facto* clause because prisoners' crimes pre-dated program), cert. denied ___ U.S. ___, 131 S.Ct. 1568, 179 L.Ed.2d 476 (2011).

Petitioner argues that the state court determination is contrary to existing Supreme Court precedent in Lynce v. Mathis, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997). There, the state prisoner had been awarded early release credits in order to alleviate prison overcrowding and had actually been released. The state subsequently enacted a statute which retroactively cancelled his early release credits and he was reincarcerated. That retroactive cancellation violated the *ex post facto* clause. Here, however, the Petitioner never received sentencing credits towards an unconditional release

date.[7]   The regulations and DOC's interpretation thereof by which he was

denied such credits have never been modified.

As noted by the Supreme Court in <u>Weaver v. Graham</u>, 450 U.S. 24, 29-

30, 101 S.Ct. 960, 964-65, 67 L.Ed.2d 17, 23-24 (1981), also cited by the

Petitioner:

> [T]wo critical elements must be present for a criminal or penal law
> to be *ex post facto*: it must be retrospective, that is, it must apply
> to events occurring before its enactment and it must disadvantage
> the offender affected by it. [A] law need not impair a "vested right"
> to violate the *ex post facto* prohibition. ... [T]he *ex post facto*
> prohibition ...forbids the imposition of punishment more severe
> than the punishment assigned by law when the act to be punished
> occurred.  Critical to relief under the *Ex Post Facto* Clause is not
> an individual's right to less punishment, but the lack of fair notice
> and government restraint when the legislature increases
> punishment beyond what was prescribed when the crime was
> consummated.   Thus, even if a statute merely alters penal
> provisions accorded by the grace of the legislature, it violates the
> Clause if it is both retrospective and more onerous than the law
> in effect on the date of the offense.

<u>Id</u>.

In <u>Weaver</u>, the state modified the law relating to gain time after the date

of the petitioner's crime.  Although the law did not apply retroactively, the

effect of curtailing gain time "changed the legal consequences of acts

completed before its effective date."  <u>Id.</u>, at 31.  Because the modification

---

[7]The DOC's internal calculation of eligibility for release in response to <u>Bowden</u>
has previously been addressed.

reduced the accumulation of gain time, it had the effect of lengthening the

petitioner's sentence and thus, violated the *ex post facto* clause.  Id.

Such is not the case here.  First of all, there has been no change in

DOC's policy denying all sentencing credits towards unconditional release for

prisoners serving life sentences.  Weaver, 450 U.S. at 32 n.17 ("a law may be

retrospective ... if it alters the length of the sentence, [and] also if it changes

the maximum sentence from discretionary to mandatory").  The Petitioner

remains eligible for good time, gain time and merit time credits to count

towards less restrictive custody, parole eligibility and possible commutation.

Id.; United States v. Wilson, 210 F.3d 230, 233 (4th Cir. 2000) ("the guiding

question ... is 'whether the law changes the legal consequences of acts

completed before its effective date'") (quoting Weaver, 450 U.S. at 31).

Nothing has changed and the clarification pronounced by Jones has not had

the effect of lengthening the Petitioner's sentence.  Stiver v. Meko, 130 F.3d

574, 578 (3rd Cir. 1997) (because statute enabling sentence reduction was

passed after prisoner's conviction, no *ex post facto* violation when BOP

revoked regulation allowing reduction).  "[T]here can be no violation of the *ex

post facto* clause because the legal consequences of [the] crime ... were the

same when [the Petitioner] committed it as they are today."  Id.

Once again, Petitioner's argument fails to recognize the two substantial

hurdles facing him in an action under §2254. First, rulings of state law are not reviewable. Petitioner argues that

> DOC's decision, after <u>Bowden</u>, not to honor the sentence-reduction credits that [Petitioner] - an inmate serving a term of years - *had earned and been awarded* thus necessarily disadvantaged [Petitioner] by lengthening his sentence. Moreover, because it effectively revoked the sentence-reduction credits [he] *had already earned* under the regulations in place at the time of his offense and sentencing, DOC's decision "was clearly retrospective."

[Doc. 12 at 15] (emphasis added). The state court, however, held as a matter of state regulatory and constitutional law that the regulations as promulgated and interpreted and applied by DOC dictated that no prisoner having been given a life sentence was entitled to earn or be awarded sentence-reduction credits. As the state court held "[Petitioner] does not allege that any legislation or regulation has altered the award of sentence reduction credits. *Nor has DOC changed its interpretation of its applicable regulations*." <u>Jones</u>, 364 N.C. at 259 (emphasis added). In other words, despite Petitioner's adamant assertions to the contrary, as a matter of state law he never earned any sentence-reduction credits and he was never awarded any.

Second, Petitioner cannot prevail simply by demonstrating that the state court was in error in applying <u>Lynce</u>. Rather, he must show that the state court ruling addresses the same issue as a Supreme Court precedent and decides it differently, or "confronts facts that are materially indistinguishable

24

from a relevant Supreme Court precedent and arrives at a result opposite to [it]." <u>Williams</u>, 529 U.S. at 405, 120 S.Ct. at 1519, 146 L.Ed.2d at 425.  In <u>Lynce</u> there was no question as to whether the prisoner had been awarded time credits and actually been released based thereon.  Then the credits were retroactively repealed by legislative act, thus requiring the prisoner to be re-incarcerated.  Here, based on the administrative interpretation of DOC and the judicial construction of the Supreme Court of North Carolina, Petitioner was never granted the credits.  As such, <u>Lynce</u> is inapplicable to the present facts.  At best, Petitioner's argument is that <u>Lynce</u> should apply by analogy, but that is insufficient to meet the standard of <u>Williams</u>.  The Supreme Court of North Carolina may have misapprehended the reach of <u>Lynce</u>, and may have been wrong in its interpretation of Federal law (and that is really all that Petitioner argues), but that is irrelevant.  The state court decision was not clearly contrary to any precedent of the United States Supreme Court.

> As amended by AEDPA, §2254 stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther. ...  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington, 131 S.Ct. at 786. Such is not the case here. The holding of the Jones Court, relied on by the North Carolina Supreme Court in summarily rejecting the Petitioner's habeas petition, was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. Moreover, two courts have previously addressed precisely this issue and are in agreement with this Court. Baggett, 2011 U.S. Dist. LEXIS 71724 (E.D.N.C. July 1, 2001); Waddell v. Keller, No. 3:10cv532 (W.D.N.C. Sept. 6, 2011). As such, there is clearly no unanimity of judicial opinion contrary to Jones. So far there is judicial unanimity in accord with Jones. For these reason Petitioner's *ex post facto* argument must fail.


**TIMELINESS OF PETITIONER'S FILING**

The Respondents argue that the Petitioner's filing of this action is untimely. [Doc. 9 at 9-15].

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> . . .
>
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d). Petitioner, however, asserts that the factual predicate for

his claim in this action did not arise until he was not released on October 29, 2009.  Therefore, Petitioner argues that he had until October 29, 2010, to file, and this action was filed on October 21, 2010.

Petitioner's position on this point, however, appears to be inconsistent with his position on his substantive claims.  As mentioned above, Petitioner contends that "the sentence-reducing credits [he] had already earned under the regulations in place at the time of his offense and sentencing" entitled him to release as of *June 25, 2008*. [Doc. 12 at 15].  As such, it flows from Petitioner's own argument that the entire factual predicate upon which he bases his claim was present when he was not released on that date. As such, it would appear that Petitioner's filing is not timely.

Even if Petitioner were to argue that this failure to release him could not have been discovered even with due diligence until the North Carolina Court of Appeals issued its decision in <u>Bowden</u>,[8] that event occurred on November 4, 2008.  Petitioner's action was filed nearly two years later.

Be that as it may, the United States Supreme Court has recently held that "the AEDPA 'statute of limitations defense ... is not jurisdictional.'" <u>Holland v. Florida</u>, ___ U.S. ___, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130, 143 (2010)

---

[8] It is noted, however, that Mr. Bowden had the foresight to file his action that resulted in the Court of Appeals decision.

(citations omitted). Therefore, this Court need to reach the issue of the timeliness of the Petitioner's filing. For this reason the Court declines to rule on this defense.

**Certificate of appealabilty.**

The Court finds that summary judgment on behalf of the Respondents is appropriate. The Court further finds that the Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller -El v. Cockrell, 537 U.S. 322, 336-38, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable[9] or wrong) (citations omitted). As a result, the Court declines to issue a certificate of appealability. Rule 11(a), Rules Governing Section 2254 Proceedings for the United States District Courts.

---

[9] It is noted that two justices on the Supreme Court of North Carolina found the *state* law issue regarding the application of the regulations to be debatable, Jones, 364 N.C. at 264, 698 S.E.2d at 60-61, but that issue is not before this Court.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Respondents' Motion for Summary Judgment [Doc. 7] is hereby **GRANTED** and this action is hereby **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that the Court denies a certificate of appealability.

Signed: October 7, 2011

Martin Reidinger
United States District Judge